UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ABU BAKARR JALLOH<br>3316 Broker Lane<br>Woodbridge, VA 22193<br><br>and<br><br>MOHAMMAD ASIF SAFI<br>41 Cynthias Pl. #301<br>Fredericksburg, VA 22406<br><br>     Plaintiffs,<br><br>v.<br><br>REGAL MOTORS INC.<br>Registered Agent:<br>Khalid Azimi<br>410 Hudgins Rd<br>Fredericksburg, VA 22408<br><br>ALHPA MOTOR SPORTS INC.<br>Registered Agent:<br>REGAL MOTORS INC.<br>410 Hudgins Rd<br>Fredericksburg, VA 22408<br><br>KHALID AZIMI<br>10621 Smith Pond Lane<br>Manassas, VA 20112<br><br>and<br><br>YONUS ATTAI<br>8801 Classic Lakes Way<br>Nokesville, VA 20181<br><br>     Defendants. | Case No.: _____<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**COMPLAINT FOR FAILURE TO PAY OVERTIME WAGES
<u>AND FOR WRONGFUL TERMINATION</u>**

Plaintiffs ABU BAKARR JALLOH and MOHAMMAD ASIF SAFI, by and through

1

undersigned counsel, hereby submit their Complaint for Failure to Pay Overtime Wages and for Wrongful Termination against Defendants REGAL MOTORS INC., KHALID AZIMI and YONUS ATTAI, to recover unpaid overtime wages, other unlawful deductions, liquidated damages, reasonable attorney's fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. (hereinafter "FLSA") and for back pay, compensatory, punitive and other damages for the hostile work environment and wrongful termination of Plaintiff ABU BAKARR JALLOH in violation of 42 U.S.C. § 1981.

## PARTIES AND JURISDICTION

1. Plaintiffs ABU BAKARR JALLOH and MOHAMMAD ASIF SAFI (hereinafter, "Plaintiffs") are adult residents of the Commonwealth of Virginia.

2. Plaintiffs ABU BAKARR JALLOH is black and from Sierra Leone.

3. MOHAMMAD ASIF SAFI is brown-skinned and Afghani.

4. Defendant REGAL MOTORS INC. corporation formed under the laws of the Commonwealth of Virginia and operates various used car lots in Manassas, Stafford, and Fredericksburg, Virginia. At times relevant herein Defendant REGAL MOTORS INC. operated as "Alpha Motor Sports" located at 410 Hudgins Road in Fredericksburg, Virginia (the "car lot").

5. Defendant ALPHA MOTORSPORTS INC. is a corporation formed under the laws of the Commonwealth of Virginia with its principal place of business in Fredericksburg, Virginia. Upon information and belief, Defendant ALPHA MOTORSPORTS INC. is a wholly owned subsidiary of Defendant REGAL MOTORS INC. and joint employer of the Plaintiffs. It is unclear which entity employed the Plaintiffs and whether there is even a significant distinction between the two entities.

6. Defendant KHALID AZIMI is an owner and principal person who exerts control over corporate Defendants and is a resident of Fairfax County. He is Afghani.

7. Defendant YONUS ATTAI is an owner and principal person who exerts control over corporate Defendants and is a resident of Prince William County. He too is Afghani.

8. Nearly every day, Defendants KHALID AZIMI and YONUS ATTAI would visit the car lot where the Plaintiffs were employed and oversee the operations of the car lot and manage the terms of the Plaintiffs' employment with the Defendants.

9. Defendants jointly operate as an integrated enterprise. According to annual report records provided and prepared in 2015, 2016 and 2017 by the defendants signed by the defendants, both corporate Defendants are owned and operated by KHALID AZIMI and YONUS ATTAI.

10. At all times relevant, the Defendants were Plaintiffs' "employer" for purposes of the FLSA.

11. Under Section 1981 directors, officers, and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable. See *Tillman v. Wheaton-Haven Recreation Association*, 517 F.2d 1141, 1146 (4th Cir.1975); *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.), cert. denied 422 U.S. 1006, (1975); *Jeter v. Boswell*, 554 F.Supp. 946, 951-53 (N.D.W.Va.1983); *Smith v. Bray*, 681 F.3d 888, 895 (7th Cir. 2012).

12. At all times relevant, the Defendants were Plaintiffs' "employer" for purposes of 42 U.S.C. § 1981.

13. Defendants have engaged in unlawful employment practices at the car lot in violation of 42 U.S.C. § 1981.

14. At all times relevant, each Plaintiff worked as a car lot attendant, a non-exempt position, performing manual labor as directed, involving little to no discretion.

15. At all times relevant, Defendants generated gross revenues exceeding Five Hundred Thousand Dollars ($500,000.00) and qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

16. At all times relevant, Plaintiffs were individual employees who engaged in interstate commerce as set forth under 29 U.S.C. §§ 206-207.

17. This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because both one of the Defendants and one of the plaintiffs reside in this venue.

18. On March 13, 2017 Defendants hired Plaintiff Abu Bakarr Jalloh to work as a car lot attendant at the promised rate of $13.75 an hour. He worked seven (7) days a week. He was never afforded a break lasting longer than fifteen minutes. On some occasions he was required to deliver vehicles to customers in other states. He was also required to move cars and perform manual tasks as assigned. He worked until his termination on October 1, 2018. He worked an average of 79.8 hours a week, of which he was only paid for 40. During the course of his employment he is owed an average of $820.88 a week in unpaid overtime wages ($13.75 x 39.8 x 1.5). He was paid less that what he was owed, and he was not paid for all the hours he worked. The Defendants deliberately did not track his hours, even though they had purchased and implemented a timekeeping system for other employees. Plaintiff Abu Bakarr Jalloh meticulously tracked his own hours. *See* Exhibit A. He worked under this arrangement from the period of

March 2017 until the end of September 2018 for a period of 78 weeks. Accordingly, he is owed overtime wages in the amount of $64,028.64.

19. On September 16, 2017 Defendants hired plaintiff Mohammad Asif Safi to work as a car lot attendant at the promised rate of $13.75 an hour. He generally worked six (6) days a week. He was never afforded a break lasting longer than fifteen minutes. On some occasions he was required to deliver vehicles to customers in other states. He was also required to move cars and perform manual tasks as assigned. He worked until he was terminated for complaining about his pay in December 2018. He was promised a regular rate of $13.75 an hour. (Some of his wages were deducted for payment toward a Toyota he purchased from the Defendants). He worked an average of 63.25 hours a week, of which he was only paid for 40. During the course of his employment he is owed an average of $484.69 a week in unpaid overtime wages ($13.75 x 23.5 x 1.5). He was paid less that what he was owed, and he was not paid for all the hours he worked. The Defendants deliberately did not track his hours, even though they had purchased and implemented a timekeeping system for other employees. Plaintiff Mohammad Asif Safi did meticulously track his own hours. *See* Exhibit B. He worked under this arrangement from the period of September 2017 until December 6, 2018 for a period of 58 weeks. Accordingly, he is owed overtime wages in the amount of $28,112.02.

20. On December 4, 2018, Plaintiff Mohammad Asif Safi received a notice which confirmed that he is expected to work from 9:00 a.m. to 7:30 p.m. Monday through Friday, and from 9:00 a.m. to 8:00 p.m. on Saturdays for an average week of 63.5 hours. *See* Exhibit C. In response to this notice, Plaintiff Mohammad Asif Safi informed Defendants that he could no longer work so many hours without pay and was terminated in response. He wrote to Defendant Khalid Azimi:

```
Many times I have told Alpha Motors that I need to [be]
paid my wages [for the time I work].  I keep telling you to
pay my wages the right way.  You do not do it!!!!  If you
cannot promise to pay my wages I cannot work for you for
free.
```

In response to this notice Plaintiff Mohammad Asif Safi was terminated. On December 6, 2018 Plaintiff Mohammad Asif Safi went to work and was told by Mansor Attai, Accountant and Jawidd Sarwari, assistant operation manager that he was terminated and not to come back

21. Generally speaking, Plaintiffs Abu Bakarr Jalloh and Mohammad Asif Safi worked identical jobs, for the same promised rate of pay, at the car lot.

22. At all times during the Plaintiffs' employment the Defendants purposefully maintained a racially hostile work environment toward Plaintiff Bakarr Jalloh on the basis of his race, and routinely subjected him to harsh treatment and comments based on his race. This mistreatment was witnessed by Plaintiff Mohammad Asif Safi, among others.

23. For example, on August 20, 2018 Plaintiff Mohammad Asif Safi and Defendants' Operations Manager, Shakib Hashimi Sale ("Operations Manager Sale"), were walking together in the car lot. Mr. Sale told Plaintiff Mohammad Asif Safi that there were opportunities for promotion within the company. In response, Plaintiff Mohammad Asif Safi, who is Afghani like the Defendants, noted that his co-worker, Plaintiff Abu Bakarr Jalloh had been working for Defendants longer. In response, Operations Manager Sale, speaking in Dari, told Plaintiff Asif Mohammad Saafi that Plaintiff Abu Balkarr Jalloh "is a black guy and a donkey and he won't go anywhere in the company."

24. By further example, about a week later, Plaintiff Mohammad Asif Safi was in Operations Manager Sale's office, whereupon Operations Manager Sale began complaining about how Plaintiff Abu Bakarr Jalloh, like all Africans, is stupid.

6

25. For even further example, on September 24, 2018 at about 1:15 p.m. Operations Manager Sale asked Plaintiff Abu Bakarr Jalloh a question about an interaction Plaintiff Abu Bakarr Jalloh had with a customer. Then Operations Manager Sale said "You Africans are from another planet. You are dumb and stupid. Is that how people like you in Africa are? I will tell you what to do and you will do what I say you need to do." In response Plaintiff Abu Bakarr Jalloh requested that Operations Manager Sale address him in a professional manner to which he replied, "F**k You!"

26. Indeed, Plaintiff Abu Bakarr Jalloh's race was the criteria discussed by the president of the company for his termination.

27. On Saturday September 29, 2018, Defendant Khalid Azimi called Plaintiff Abu Bakarr Jalloh yelled at him and called him a "black stupid boy" in the parking lot in front of the office. Plaintiff Abu Bakarr Jalloh was upset, wept, and was told to go home. On Monday, October 1, 2018 Defendant Khalid Azimi terminated Plaintiff Abu Bakarr Jalloh by text.

28. Prior to this incident, Plaintiff Abu Bakarr Jalloh had never been disciplined or received a written reprimand for his performance.

29. After his termination Defendant Khalid Azimi wrote to Plaintiff Abu Bakarr Jalloh a letter identifying vague reasons for his termination. *See Exhibit C.* The only specific reason identified was because Plaintiff Abu Bakarr Jalloh had filled up a used car the wrong type of gas. Other non-black employees were not terminated by Defendant Khalid Azimi for precisely the same mistake within the past year.

30. At all times during the Plaintiffs' employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified employees of the federal overtime compensation requirement.

31. At all times during the Plaintiffs' employment with Defendants, Defendants did not post or otherwise make available at Defendants' places of business any poster or information that notified employees of any enforcement remedies available to employees who are not paid by employers as required by federal law, including notification that the Department of Labor may recover back wages on behalf of employees or that underpaid employees have a private right of action to file a lawsuit against employers for nonpayment or underpayment of wages in violation of federal law.

32. At all times during the Plaintiffs' employment with Defendants, Defendants did not post or otherwise make available at Defendants' places of business any poster or information that notified employees of any enforcement remedies available to employees who are victim of discrimination.

33. At all times during the Plaintiffs' employment with Defendants, the Defendants failed to undertake any efforts or reasonable care to prevent and correct promptly any unlawful, harassing behavior

34. At all times during the Plaintiffs' employment with Defendants, the Defendants failed to implement any preventive or corrective opportunities regarding discriminatory conduct.

35. At all times during the Plaintiffs' employment with Defendants, Defendants had no policy prohibiting discriminatory harassment, and no mechanism by which an employee may report internally unlawful discrimination.

36. At all times during Plaintiffs' employment with Defendants, Defendants did not post or otherwise make visible or available at the Defendants' place of business any poster or information that notified employees of the fact that federal law prohibits discrimination against,

retaliation against or discharging workers who file a complaint or participate in any proceeding to recover unpaid or underpaid wages under federal law.

37. At all times during Plaintiffs' employment, Defendants explicitly and willfully misinformed each Plaintiff that Plaintiff was not entitled to be paid for overtime hours worked each week in excess of forty at the federally required overtime pay rate.

## COUNT ONE:
## UNPAID WAGES AND OVERTIME PREMIUMS
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

38. Plaintiffs re-allege and incorporate by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

39. Section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees…for a workweek longer than forty (40) hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one-and-one-half (1½) times the regular rate at which he is employed."

40. At all times, each Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. §207(a)(1), and Defendants were Plaintiffs' "employer" under FLSA, 29 U.S.C. § 207(a)(2).

41. Defendants, as Plaintiffs' employer, were obligated to compensate each Plaintiff at the overtime rate of one-and-one-half (1½) times his or her regular rate for all hours worked per week in excess of forty (40).

42. At all times, Defendants failed and refused to pay Plaintiffs at the overtime rate of one-and-one-half (1½) times her regular rate for all hours worked per week in excess of forty (40).

43. At Defendants' command, and with Defendants' actual knowledge, Defendants suffered or permitted Plaintiffs to regularly work more than forty (40) hours per week.

44. Defendants knowingly suffered and permitted Plaintiff and those similarly situated to regularly work more than forty (40) hours in workweeks.

45. For all hours worked per week by Plaintiffs in excess of forty (40), Defendants paid Plaintiff no overtime wages or complete overtime wages, thereby violating the overtime requirements of the FLSA.

46. An employer who violates the FLSA overtime provision is ordinarily "liable to the employee or employees affected in the amount of their unpaid wages ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

47. The award of liquidated damages is mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise [to the FLSA action] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.

48. The FLSA "plainly envisions" that liquidated damages "are the norm" for violations of the FLSA. *Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir.1997).

49. The FLSA permits a trial court in its sound discretion to refuse or reduce an award of liquidated damages only where the employer demonstrates *both* good faith *and* reasonable grounds for believing that he was not acting in violation of FLSA. *See Clifton D. Mayhew, Inc. v. Wirtz,* 413 F.2d 658, 661-62 (4th Cir. 1969).

50. The Fourth Circuit has held that the test of the good faith requirement to excuse liability is an objective one and not a subjective one. *Id.*

51. Here, Defendants cannot demonstrate good faith and reasonable grounds for their failure to pay Plaintiffs overtime wages as required by the FLSA.

52. Defendants can point to no authority or good faith basis they relied upon for their

failure to pay Plaintiffs the wages at the FLSA required rate for overtime hours worked each week.

53. On information and belief, at all times during Plaintiffs' employment, Defendants had actual knowledge of the FLSA overtime pay requirement.

54. On information and belief, at all times during Plaintiffs employment, Defendants had actual knowledge that Plaintiffs should have been paid one-and-one half (1½) times their regular rate of pay for hours worked each week in excess of forty (40).

55. On information and belief, at all times during Plaintiffs' employment, Defendants had actual knowledge that the rate and method by which Defendants paid Plaintiff was in direct violation of the FLSA's overtime pay requirement.

56. Defendants' failure and refusal to pay Plaintiffs the proper wages for overtime hours worked as required by the FLSA was willful and intentional and was not in good faith.

57. As a consequence of the foregoing, Plaintiffs will be entitled to payment of his or her attorney's fees and costs.

58. The FLSA provides that a court "***shall***, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b) (emphasis added).

59. In contrast to other fee-shifting statutes where the award of attorney's fees and costs is discretionary with the court, an award of attorney's fees to a prevailing plaintiff in a FLSA case is mandatory. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983).

60. As a consequence of the foregoing, Plaintiffs are entitled to recover his or her reasonable attorney's fees and costs associated with the prosecution of this case.

61. This court has ruled that the Plaintiffs' counsel's rate of $425.00 an hour "is within the range of reasonable rates approved in the Fourth Circuit" and has approved this rate recent

awards. *Jo-Ann Brown, et al. v. Transurban USA, Inc., et al.,* Case 1:15-cv-00494-JCC-MSN (E.D.Va. 2016); *Riggle et al v. The Revolution Darts and Billiards-Centreville, LLC et al*, Case 1:17-cv-00792-CMH-IDD (E.D. Va. 2018).

WHEREFORE, Defendants are liable, to each Plaintiff, and all other similarly-situated individuals, for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT TWO:
## HOSTILE WORK ENVIRONMENT AND WRONGFUL TERMINATION OF PLAINTIFF ABU BAKARR JALLOH IN VIOLATION OF 42 U.S.C. § 1981

62. Plaintiff Abu Bakarr Jalloh re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

63. Title 42 U.S.C. § 1981 forbids racial discrimination in the making of private as well as public contracts.

64. Section 1981 permits victims of race-based employment discrimination to obtain a jury trial at which both equitable and legal relief, including compensatory and punitive damages may be awarded. *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 95 S. Ct. 1716 (1975).

65. The Defendants engaged in intentional discrimination and did so with malice or reckless indifference to the federally protected rights of Plaintiff on account of the Plaintiff's race as that term is broadly defined under 42 U.S.C. § 1981 so as to include his African ancestry. For example, § 1981 has been applied to discrimination against groups such as blacks, whites, Latinos, Jews, Iraqis, and Arabs. *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604 (1987); *Shaare Tefila*

*Congregation v. Cobb*, 481 U.S. 615 (1987). *See Pourghoraishi v. Flying J,* 449 F.3d 751 (7th Cir. 2006) (collecting cases).

66. Defendants knew about, or reasonably should have known about the hostile work environment created by themselves and their supervisors but failed to take appropriate remedial actions. Defendants also directly participated in the alleged violations, exhibited gross negligence in the supervision of subordinates who committed the wrongful acts; and failed to take action upon receiving information that violations are occurring.

67. As a direct and proximate result of Defendants' harassment of Plaintiff Abu Bakarr Jalloh has suffered damages, including emotional distress, damage to his reputation, anxiety, nightmares, insomnia, humiliation, and loss of enjoyment of life as well as termination of his employment.

68. Had Defendants not terminated Plaintiff Abu Bakarr Jalloh he would have continued working for Defendants.

WHEREFORE, Plaintiff Abu Bakarr Jalloh prays that this Court award Plaintiff Abu Bakarr Jalloh compensatory damages in an amount to be determined by the jury; award punitive damages in favor of Plaintiff Abu Bakarr Jalloh against Defendants in an amount to be determined by the jury; award Plaintiff Abu Bakarr Jalloh his reasonable costs and expenses incurred in this action, including attorneys' fees; order equitable relief including but not limited to back pay and front pay for Plaintiff Abu Bakarr Jalloh; and enter such other and further relief as the Court may deem just and proper.

### COUNT THREE:
### WRONGFUL TERMINATION FOR PLAINTIFF MOHAMMAD ASIF SAFI IN VIOLATION OF VIRGINIA COMMON LAW

69. Plaintiff Mohammad Asif Safi re-alleges and incorporates by reference each

and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

70. Plaintiff again protested the Defendants' failure to timely pay his wages and in response he was terminated. *See* Exhibit C.

71. Virginia law prohibits the wrongful termination of an employee who refuses to violate an established public policy. *See Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985);

72. It is an established public policy in the Commonwealth of Virginia that employees are entitled to timely payments for wages owed, that employees are entitled to payments without any unlawful deductions, and a minimum wage for hours worked. *See* §§ 40.1-28.10 and 40.1-29. Further, a plaintiff's termination for complaining about unpaid wages presents a cognizable claim under the *Bowman* exception. *Blanchard v. Capital One Services, LLC*, CL 2015-0006937 (Fairfax County) (October 26, 2015).

73. Plaintiff reported abuses of state wage and hour laws regarding himself, insisted on compliance with wage law requirements under state and federal law, and demanded timely payment of wages for himself in accordance with state and federal law. In response the Defendants terminated Plaintiff's employment.

74. Section 40.1-29 (D) prohibits the unilateral withholding of any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law. Plaintiff never consented to having his wages not paid or unlawfully withheld.

75. The Defendants knew or should have known that Plaintiff's demands for past due wages on behalf of himself was lawful and knew or should have known that Plaintiff's continued employment without pay was illegal; and despite knowledge of their obligations to Plaintiff, and

in an effort to pay Plaintiff less than what he was promised his and what was a actually owed under state and federal law, continued to violate the law by withholding wages owed to him and terminated him specifically because he complained and protested about the manner in which the Defendants failed to pay his wages.

76. The Defendants' conduct was not in mere ignorance of the law, but in fact, was in willful violation of state laws which require payments to be timely made in full for wages owed. The Defendants' insistence that administrative costs of operating their business be borne by hourly employees demonstrates a reckless indifference to the statutory protections afforded to the least paid employees in the Commonwealth, giving rise to a showing of actual malice and/or reckless indifference to the property rights of others, and therefore, mandating the imposition of punitive damages.

77. Intentional torts such as a *Bowman* claim necessarily carries the specter of punitive damages. *Smith v. Litten,* 256 Va. 573, 507 S.E.2d 77, 80 (1998)("A summary of our opinions shows that if a tortfeasor's tort was intentional rather than negligent, *i.e.,* deliberately committed with intent to harm the victim; or, if a tortfeasor's negligent act or omission in violation of the common law reflects malice, willful or wanton conduct, or a conscious disregard of the victim's common law rights; and if the evidence is sufficient to support an award of compensatory damages, the victim's right to punitive damages and the quantum thereof are jury questions.").

78. As a result of Defendants' wrongful termination of Plaintiff, he has suffered economic damages as well as other damages, including emotional distress, damage to his reputation, anxiety, nightmares, insomnia, humiliation, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants jointly and severally, for back pay from the date of his termination to the time of trial, reasonable

attorney's fees, compensatory damages and/or punitive damages in the amount of $300,000.00, costs and such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury with respect to each claim in this Complaint.

Date: January 21, 2019


/s/
Matthew T. Sutter, Esq., VSB 66741
Sutter & Terpak, PLLC
7540A Little River Turnpike, First Floor
Annandale, VA 22003
Telephone: 703-256-1800
Facsimile: 703-991-6116
Email: matt@sutterandterpak.com
Web: www.sutterandterpak.com
Counsel for Plaintiffs